UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CLAIRE FALLESON, on behalf of herself and all
other employees similarly situated,

                              Plaintiff,

                                                                        DECISION AND ORDER

                                                                        03-CV-6277L

                     v.

PAUL T. FREUND CORPORATION,


                              Defendant.

_____


          Plaintiff, Claire Falleson ("Falleson"), a former employee of Paul T. Freund Corporation

("Freund"), commenced this action alleging that Freund failed to pay her overtime compensation in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207, and New York Labor Law

§190 et seq. and §650 et seq.  Freund claims that Falleson was not an employee entitled to overtime

because she was an exempt, outside-sales-person under the regulations adopted by the Department

of Labor, 29 C.F.R. §541.500.  In addition, Freund claims that even if Falleson were a covered

employee, she has failed to present evidence that she worked overtime.

          Discovery is now complete and Freund has moved for summary judgment dismissing the

complaint.  For the reasons that follow, that motion is denied.

**DISCUSSION**

A.    **Standard of Review on a Motion for Summary Judgment**

It is well settled that a motion for summary judgment should be granted only where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When ruling on a motion for summary judgment, the court must construe the alleged facts in the light most favorable to the nonmovant.  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party bears the ultimate burden of proof, it is his or her responsibility to confront the motion for summary judgment with evidence in admissible form.  *Anderson*, 477 U.S. at 256.

B.    **Facts**

Freund is a manufacturer of boxes located in Palmyra, New York.  Falleson  was employed by Freund from May 4, 1999 until October 21, 2002.  Her initial job duties included estimating, purchasing, supporting salespersons, customer support, answering customer or phone calls, production scheduling and running errands.

In the summer of 2002, plaintiff was promoted to full-time salesperson position.  The bulk of her former job duties were delegated to other employees, and her job responsibilities were thereafter primarily limited to sales.

The sales process at Freund involves several steps.  Customer contact may be initiated by a salesperson, or by the customer itself.  After a customer is identified, a salesperson determines the customer's needs with respect to cartons and artwork.  The salesperson then coordinates with a designer to develop a prototype carton for the customer, which is shipped to the customer for review.  Once the prototype is revised to the customer's satisfaction, the salesperson provides a price quotation to, and obtains a purchase order from, the customer.  The salesperson maintains continuing contact with the customer throughout the production process, and keeps the customer apprised of the status of their order.

With respect to Falleson's particular performance of the salesperson position, some of Falleson's job responsibilities required her to be out of the office.  These duties included making sales calls, picking up films, picking up dies, dropping off products to have structural designs created and checking on orders.  Falleson also met periodically with customers at their place of business to make sales calls, and also met with Freund's vendors.

Falleson testified that she spent 75 to 80 percent of her work day performing tasks inside the office, and fifteen to twenty percent of her work day performing tasks and keeping appointments outside of the office.  Occasionally, Falleson entertained clients in the evening, taking clients out to dinner between 10 and 15 times during her employment and on one occasion to a Buffalo Sabres game.  She also attended trade shows on one or two occasions.

Falleson claims that during her tenure as a salesperson, she generally worked between 50 and 55 hours per week.  Nonetheless, at her deposition, Falleson testified that her work hours were generally from 8:30am to 5:00pm with a ninety minute lunch.  Between fall 1999 and fall 2000,

Falleson was permitted to arrive at the office at a later time, so that she could be home to supervise her son when he boarded the school bus.  From November 17, 2000 to February 5, 2001, Falleson was out of the office on maternity leave.  Although Falleson alleges that she performed some work while she was out on maternity leave, she does not recall working more than 40 hours during any of those weeks.  Beginning in August 2001, Falleson maintained an electronic appointments calendar reflecting out-of-office appointments, for the purpose of seeking expense reimbursements.

## C.   Claims Under the FLSA

The FLSA requires compensation at one and a half time the regular rate when an employer requires the employee to work more than forty hours per week.  *See* 29 U.S.C. §207(a)(2).  To establish an FLSA claim, plaintiff must prove that: (1) she was an employee who was eligible for overtime (i.e., that she was not exempt from the Act's overtime pay requirements); and (2) that she actually worked overtime hours for which she was not compensated.  *See id.*; *Barry v. Town of Elma*, 2005 U.S. Dist. LEXIS 5548 at *5-*6 (W.D.N.Y. 2005).[1]

### 1.   Falleson's Eligibility for Overtime Pursuant to the FLSA

The FLSA provides that its overtime requirements do not apply to any employee:

(a)   who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or place of business in:
    (1)   making sales within the meaning of section 3(k) of the Act; or
    (2)   obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

---

[1]  The relevant portions of New York Labor Law do not diverge from the requirements of the FLSA: hence, although the Court's analysis makes specific reference to federal law, it applies equally to Falleson's state law claims.  *See Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002); *Bandhan v. Lab. Corp. of America*, 2002 U.S. Dist. LEXIS 25972 at *20 n. 2 (S.D.N.Y. 2002).  *See generally Brown v. Tomcat Electrical Security, Inc.*, 2007 U.S. Dist. LEXIS 63542 at *19 (E.D.N.Y. 2007).

(b)      whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed twenty percent of the hours worked in the workweek by nonexempt employees of the employer:   Provided, that the work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. 541.500.

Freund, which bears the burden of demonstrating that an FLSA exemption applies to Falleson, claims that the salesperson position in which Falleson was employed beginning in the summer of 2000 is exempt as an "outside sales" position. *See generally Arnold v. Ben Kanowsky, Ind.*, 361 U.S. 388, 392 (1960) (alleged exemptions are narrowly construed against the employer).

In attempting to demonstrate that Falleson's salesperson position falls within the definition of "outside sales," Freund argues that Falleson was "customarily and regularly" engaged away from Freund's offices.  It is undisputed that of the nearly 290 days for which Falleson kept a calendar, more than half reflected appointments outside the office, although their duration is unclear. Falleson's outside activities allegedly included customer calls, picking up customer films and dies and dropping off products to have designs created for customers, and checking on client orders that had been subcontracted out to other companies.  Freund also contends that Falleson's in-office tasks were "incidental to and in conjunction with" her sales efforts.

Falleson, however, claims that she was employed as an inside salesperson, and was not "customarily and regularly" performing work outside of the office.  Falleson testified that between 75% and 80% of her time was spent in the office, communicating with customers and generating sales over the telephone, checking on production and raw materials, and coordinating ship dates.

Falleson was not required to make sales calls outside the office, although she did make deliveries to vendors and was reimbursed for her mileage in doing so.

In short, there is significant disagreement between the parties concerning Freund's expectations with respect to whether sales were to be performed inside the office, as well as the frequency, duration and importance of the particular duties that Falleson performed outside of the office. These contested facts are central to the determination of whether Falleson was "customarily and regularly engaged" outside of the office, and present a material question of fact as to whether the "outside sales" exception applies. As such, resolution of Falleson's status as an exempt or nonexempt employee on defendants' motion for summary judgment would be inappropriate.

### 2.    Falleson's Claim of Uncompensated Overtime Hours

It is undisputed that neither Falleson nor Freund kept any formal record of Falleson's work hours. It has long been settled that where an employer's records are insufficient to establish an employee's actual working hours, and the employee is unable to offer credible substitutes, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 687 (1946). Once a plaintiff makes that showing, the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*, 328 U.S. 680 at 687-88. Thus, where a plaintiff is unable to provide any evidence showing that she was actually required to work more than forty hours in any given work week "as a matter of just and

reasonable inference," or to rebut her employer's evidence of the hours she worked, she cannot establish the second element of an FLSA claim. *See Barry*, 2005 U.S. Dist. LEXIS 5548 at *9 (granting summary judgment to employer where employee generally claimed to have worked more than forty hours per week, but his scheduled work week was only 35 hours, and plaintiff did not allege having worked more than five hours beyond his usual schedule in any given week without overtime).

Here, I find that Falleson has narrowly managed to meet her burden to show that she worked overtime "as matter of just and reasonable inference."

Specifically, although Freund has produced significant undisputed evidence to contradict Falleson's recollection of the time she spent *in the office*, including other portions of Falleson's own testimony, Freund has failed to "negative the reasonableness of the inference" in Falleson's favor with respect to work she performed outside of Freund's regular office hours. *See Brown*, 2007 U.S. Dist. LEXIS 63542 at *21 (summary judgment inappropriate where plaintiffs presented factual support for their contention that employer's records were inaccurate, including testimony identifying specific periods where overtime was worked and explaining what factors necessitated the additional work); *Yang v. ACBL Corp.*, 2005 U.S. Dist. LEXIS 31567 at *14 (S.D.N.Y. 2005) (summary judgment inappropriate where plaintiff presented evidence of overtime work, including identification of specific periods in which overtime was worked and the reasons it was necessary, and corroborating testimony from his employer).

Falleson testified that her usual office hours approximated 8:30a.m. to 5:00p.m. with an hour and a half for lunch, resulting in a seven-hour day and a thirty-five-hour workweek.[2]   Although Falleson claims to have taken clients to dinner and/or sporting events on a few occasions during her employment, Falleson does not allege that Freund asked or required her to undertake them as part of her duties, or even that these outings ever resulted in a work week of more than forty hours. Falleson's manager testified that he observed the arrivals and departures of his subordinates, and that he never saw Falleson spend more than forty hours in the office during any week while she was employed by Freund.   Although Falleson claims that she picked up and dropped off items to and from vendors and customers during her commute to and from work as much as five or six times per week, she does not dispute her manager's testimony that when she needed to drop off items at the end of the day, she simply left the office early, since none of the customers or vendors were open after 5:00pm.   Falleson's calendar, although of limited value as it was kept for expense reimbursement purposes and not as a timekeeping tool, nonetheless does not reflect more than forty hours of work during any week.

While such evidence may well "negat[e] the reasonableness of the inference to be drawn from [Falleson's recollection of having worked overtime]" in the office, it nonetheless fails to negate

---

[2]   Although Falleson's counsel attempts to characterize her lunch periods as "working lunches," there is no evidence that the lunches were mandated or sponsored by Freund, or that Falleson was required to, or did, perform any work during her lunch time.  Falleson testified that she and her coworkers dined together almost daily at a variety of local restaurants and often discussed customers, jobs, and fellow employees.  However, there is simply no basis – either in law or common sense – to support Falleson's suggestion that an employee's  mere discussion of work-related issues over an off-campus meal, by itself, converts a social mealtime into "work" for FLSA overtime purposes.

the bulk of Falleson's claims, which primarily rely on her recollections of having worked outside of the office, and outside of regular office hours. *Anderson*, 328 U.S. 680 at 687-88.

While Falleson makes only a feeble attempt to counter Freund's evidence, largely relying on her speculative, blanket assertion that she worked 50-55 hours per week, I nonetheless find, upon review of the parties' submissions, that Falleson has testified to sufficient additional work time to present a material question of fact as to the reasons for the disparity between her undisputed office hours of approximately 35 hours per week, and her claim to have worked 50-55 hours per week in total. Specifically, Falleson testified that during a large part of the relevant time period, she made regular deliveries and visits to vendors or customers and met with them for 15-20 minutes during her morning commute to Freund's offices. Falleson also testified that on several occasions, in connection with specific projects for particular customers, she worked late into the evening and in some cases through the weekend to complete a project. Falleson also claims to have performed work at home on occasion, such as making phone calls to customers which could not be completed during the work day.

In short, while Freund has offered ample evidence concerning Falleson's in-office hours and activities, it has not contradicted Falleson's account of work she performed outside of Freund's office hours and/or premises. At the very least, the credibility of Falleson's claim to have worked from home, during her morning commute, and on several evenings and weekends, is a question of fact appropriately reserved for the jury.

As such, while Falleson's overtime claims may rest largely on the dubious foundation of unspecified "recollection," the Court's doubts as to their ultimate merits do not diminish the fact that

Falleson has narrowly managed to satisfy her burden under the *Anderson* test and raise a material question of fact with respect to her entitlement to overtime wages under the FLSA and/or New York Labor Law.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment dismissing the Complaint (Dkt. #24) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 28, 2007.